IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROGER BROWN,

    *Plaintiff,*

  v.

JUSTIN EVANS, DENES PAPELLAS, VAUGHN M. BOND, individually and in their official capacities, NEW CASTLE COUNTY, and NEW CASTLE COUNTY POLICE DEPARTMENT,

    *Defendants.*

No. 1:21-cv-651-SB

---

Christofer Curtis Johnson, THE JOHNSON FIRM LLC, Wilmington, Delaware.

    *Counsel for Plaintiff.*

Mary A. Jacobson, NEW CASTLE COUNTY LAW DEPARTMENT, New Castle, Delaware.

    *Counsel for Defendants.*

---

**MEMORANDUM OPINION**

October 25, 2021

BIBAS, *Circuit Judge*, sitting by designation.

When police get an anonymous tip, they must ensure that it is reliable before making an arrest. Standing alone, such tips seldom give police a good reason to arrest someone. But that error is exactly what Roger Brown says happened here. He claims that police got a tip about drug dealing at his house, did not investigate further, yet still forcibly subdued and arrested him. That is enough to state a claim for excessive force and unlawful arrest.

In addition to these core allegations, Brown makes satellite claims for malicious prosecution, First Amendment retaliation, and intentional infliction of emotional distress. Those claims fail. So I will grant defendants' motion to dismiss them. But Brown's main case may proceed.

## I. BACKGROUND

At the motion to dismiss stage I take the facts alleged in the complaint as true. One February evening, an anonymous informant told the police about drug dealing at Brown's home. D.I. 7 ¶ 42. The New Castle County Police Department dispatched Officers Papellas and Evans to investigate. *Id.*

When they arrived, they found Brown sitting on a dirt bike in his driveway, talking with a few other young men. *Id.* ¶ 18. As the officers approached him, he started to move the bike back into his driveway. *Id.* ¶ 20. They yelled at him to stop and dismount, but he did not comply. Instead, he asked the officers what he had done wrong. *Id.* ¶¶ 21–22.

The officers hauled Brown off his bike and dragged him to the ground. *Id.* ¶ 23. They struggled with Brown as they tried to subdue him. Evans hit Brown repeatedly in the face and knelt on his neck, while Papellas ordered him to "stop … resisting." *Id.* ¶¶ 24–26. Eventually, one of the officers threatened to tase Brown, and he relented. *Id.* ¶ 27. The brawl left Brown with cuts and bruises. *Id.* ¶ 30.

The officers arrested him, and he was detained for a few days pending an appearance in Juvenile Court. *Id.* ¶ 36. The record for those proceedings is sealed.

Upset about the officers' conduct, Brown sued the Police Department, New Castle County, Evans, Papellas, and their supervising officer, Colonel Vaughn Bond. D.I. 7. Brown says that the officers (1) used excessive force, (2) lacked probable cause to arrest him, (3) retaliated against him in violation of his First Amendment rights, (4) maliciously prosecuted him, (5) intentionally inflicted emotional harm on him, and that the police department (6) violated his rights by failing to properly train its officers. *Id.* ¶¶ 24–71.

Now, the defendants move to dismiss all these claims.

## II. MOST OF BROWN'S CIVIL-RIGHTS CLAIMS FAIL

To survive a motion to dismiss, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Brown must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of his claims. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d. 315, 322 (3d Cir. 2008) (internal quotation marks omitted).

3

Under this standard, most of Brown's claims fail. He cannot sue the Police Department because it is not amenable to suit. His civil-rights claims against Bond fail because Bond was not personally involved in any of the alleged wrongdoing. And his malicious-prosecution claim collapses because he does not say whether proceedings against him ended favorably.

But his excessive-force and unlawful-arrest claims survive. He plausibly alleges that the officers lacked any reason to suspect him of a crime and thus violated his Fourth Amendment rights by forcibly subduing and arresting him.

### A. I dismiss Brown's claims against the Police Department

Brown names the New Castle County Police Department as a defendant. But under Delaware law, Brown can sue only New Castle County, not the Police Department. *Breitigan v. Delaware*, 2003 WL 21663676, at *2 (D. Del. July 16, 2003); Fed. R. Civ. P. 17(b) (holding that state law determines whether a state agency may be sued). So I dismiss his claims against the Police Department. But since he has already named the County as a defendant, he need not amend his complaint. I deal with his claims against the County below.

### B. Brown's excessive-force and unlawful-arrest claims against Papellas and Evans may proceed, but his malicious-prosecution claim fails

"Police officers, embodying the authority of the state, are liable under [42 U.S.C.] § 1983 when they violate someone's constitutional rights." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007). Here, Brown plausibly alleges that Officers Papellas and Evans violated his rights by forcibly arresting him.

*1. Excessive force*. Brown says that Papellas and Evans used excessive force when they accosted him because they had no reason to stop him in the first place. D.I. 7 ¶ 37. On this theory, he must allege that the officers lacked "a particularized and objective basis for suspecting criminal activity based on the totality of the circumstances." *United States v. Torres*, 961 F.3d 618, 622 (3d Cir. 2020) (internal quotation marks omitted). If the officers had that, then they were entitled to use reasonable force to detain Brown. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Here, the basis of the officers' decision to seize Brown was an anonymous tip. Where an officer relies on an anonymous tip to stop and search a suspect, the tip must be accompanied by "moderate indicia of reliability." *Florida v. J.L.*, 529 U.S. 266, 271 (2000). That is because an "anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *Alabama v. White*, 496 U.S. 325, 329 (1990).

The complaint asserts that the tip was not accompanied by any supporting information. D.I. 7 ¶ 45. On the alleged facts, there is no indication of "independent corroboration by the police of significant aspects of the informer's [story]." *White,* 496 U.S. at 332. Instead, "all the police had to go on … was the bare report of an unknown, unaccountable informant." *J.L.*, 529 U.S. at 271. That is not enough.

Because Brown avers that the officers lacked reasonable suspicion to seize him, he adequately pleads that their use of force to detain him was unreasonable. The police may not use force against innocent people who are not suspected of any crime. *Cf. Graham*, 490 U.S. at 396 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion.").

Resisting this conclusion, the officers make three counterarguments. All fail. First, they say Brown concedes that the tip supplied probable cause by acknowledging that the officers "clearly had to respond" to the report of drug dealing at his home. Def. Br. 8 (citing D.I. 7 ¶ 45). But admitting that the police had to investigate is not a concession that they had reasonable suspicion to seize *him*. Brown merely recognizes that the police should have searched for other signs of wrongdoing based on the tip.

Next, the officers argue that the police had reason to suspect Brown because he moved away from them when they approached. *Id.* "Headlong flight" from the police is "certainly suggestive" of wrongdoing. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Yet that is not what Brown says happened. While he acknowledges that he moved away from the officers, he explains that he did not "flee," but instead "mov[ed] the dirt bike … back into the driveway of his home." D.I. 7 ¶ 20. That is not flight.

Finally, to establish that the officers were correct to suspect Brown, they invite me to consider a police report providing more facts. Def. Br. 3, 9. While I "may take judicial notice of [police reports] without converting this motion to dismiss into a motion for summary judgment," I can do so "only to establish their existence and legal effect … not for the truth of the matters asserted." *Rankin v. Majikes*, 2014 WL 6893693, at *7 (M.D. Pa. Dec. 5, 2014) (internal quotation marks omitted); Fed. R. Evid. 201(b). Here, defendants ask me to look at the report to establish facts about Brown's actions on the night he was arrested. But that would require me to take the document for the truth of matter asserted. Thus, I reject their improper attempt to undercut Brown's complaint.

*2. Unlawful Arrest.* Brown claims that Papellas and Evans had no reason to believe that he had committed a crime and so violated his Fourth Amendment rights by arresting and prosecuting him. D.I. ¶¶ 41–52, 59–62. To state a false arrest claim, Brown must plead that his arrest was made without probable cause. *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020). An officer has probable cause when "the facts and circumstances within … [his] knowledge are sufficient … to [lead] a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995); *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

Brown alleges that all the officers had to go on was an anonymous tip. And "standing alone, [an] anonymous [tip] … [does] not provide the basis for … probable cause." *Illinois v. Gates*, 462 U.S. 213, 227 (1983). That is enough to state a claim for unlawful arrest.

The officers do not argue that they had probable cause to arrest Brown for a drug offense. Instead, they say that the "[c]omplaint is clear that the [o]fficers had probable cause to arrest Brown for … resisting arrest and offensive touching of a law enforcement officer." D.I. 10, at 12 (internal quotation marks omitted).

But Brown did not resist arrest or struggle with the officers until after they tried to detain him. The officers cannot point to events that happened after the attempted arrest to justify their decision. *See Hunter v. Bryant*, 502 U.S. 224 (1991) (holding that we gauge probable cause based on facts at the time the officer made the arrest).

7

It is circular for the officers to say they had cause to arrest Brown because he resisted arrest.

*3. Malicious Prosecution.* To state a claim for malicious prosecution, Brown must plead that he was prosecuted without probable cause and that the prosecution "ended in [his] favor." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). Although he asserts that proceedings were brought against him in Juvenile Court, he does not say how the case ended. Instead, he baldly asserts that claims that "the criminal proceeding resolved in [his] favor, since this was a Juvenile Court matter and is sealed." D.I. 7 ¶ 34. That conclusory statement is not enough to state a claim.

Yet all is not lost for this claim. I will dismiss it without prejudice and let Brown amend his complaint. If he tries again, he must "indicate his innocence by demonstrating that his prior criminal proceedings terminated" in discharge, refusal to indict, abandonment, acquittal, or final order in his favor. *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009).

**C. Qualified immunity**

Papellas and Evans claim qualified immunity. Surprisingly, Brown's counsel responds by pointing to an irrelevant Delaware statute. D.I. 13, at 4–5. Notwithstanding this error, I will not let the officers claim immunity just yet. If true, Brown's complaint suggests that the officers infringed his clearly established constitutional rights when they forcibly subdued and arrested him.

Qualified immunity shields the officers from liability unless they violated Brown's clearly established statutory or constitutional rights. *Lamont v. New Jersey*, 637 F.3d

177, 182 (3d Cir. 2011). A right is clearly established if it "would [have been] clear to a reasonable officer that his conduct was unlawful." *Id.* (quoting *Saucier v. Katz,* 533 U.S. 194, 201–02 (2001)).

I have already explained that Brown successfully states claims for excessive force and unlawful arrest. Thus, he clears the first hurdle by alleging that the officers violated his Fourth Amendment rights. He clears the second hurdle too: both rights were clearly established.

*1. Excessive force.* People who are not reasonably suspected of crimes have a clearly established right not to be manhandled by the police. "[A]n unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down." *El*, 975 F.3d at 340. True, drug dealing is a serious crime. But if the facts in the complaint are correct, the officers did not reasonably suspect that Brown was selling drugs. Thus, they had no justification to forcibly subdue him.

*2. Unlawful arrest.* Officers making a wrongful arrest still have qualified immunity if they "reasonably but mistakenly conclude" that they had probable cause. *Anderson v. Creighton,* 483 U.S. 635 (1987). But accepting Brown's allegations as true, the officers' mistake here was unreasonable. They suspected Brown only because of an anonymous tip. Yet an uncorroborated anonymous tip is not probable cause. *Illinois v. Gates*, 462 U.S. 213, 227 (1983); *United States v. Torres*, 534 F.3d 207, 212 (3d

Cir. 2008). So the officers had fair notice that arresting Brown based on such a tip would be unlawful.

### D. Brown fails to state a claim for First Amendment retaliation

Brown says that Papellas and Evans beat him up and arrested him because he asked them what he had done wrong. D.I. 7 ¶¶ 53−58. But the facts in his complaint undercut this assertion: they do not show that the officers accosted him *because of* his speech.

To state a claim for First Amendment retaliation, Brown must plead that his constitutionally protected speech "caus[ed]" the officers to try to stop him from speaking. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). It is "not enough to [plead] that an official acted with a retaliatory motive"; rather the motive "must be a 'but for' cause, meaning that the adverse action against the plaintiff would not have [otherwise] been taken." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

Brown fails to show that. By the time he asked the officers what he had done wrong, they had already "roughly stopped [his] progress and yelled at [him] to get off the dirt bike." D.I. 7 ¶ 21. True, Brown then asked them what he done to deserve that treatment. But the complaint does not allege the officers responded with force *because* Brown asked that question. Rather, the officers responded with force because Brown "did not immediately comply with [the officer's] commands." *Id.* ¶ 38. Thus, "the same [action] would have been [taken] absent his protected speech." *Nieves*, 139 S. Ct. at 1722 (internal quotation marks omitted). So Brown's claim fails.

10

### E. Brown's civil-rights claims against Colonel Bond fail

Brown claims that Colonel Bond violated his federal rights by "fail[ing] to … supervise … any of the officers involved in this incident." D.I. 7, ¶ 77. But liability under 42 U.S.C. § 1983 requires personal involvement in the alleged wrongdoing. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). While one can show involvement by "alleg[ing] … personal direction or … actual knowledge and acquiescence," one cannot base it on a supervisory role. *Id.*; *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981) ("[T]his Court has refused to accept § 1983 actions premised on theories of *respondeat superior*.").

Here, Brown does not explain how Bond was personally involved. Instead, he asserts that Bond was a senior officer and that he should have done more to supervise rank-and-file policemen. D.I. 7, ¶¶ 77, 87. But that assertion is textbook supervisory liability. So Brown's civil-rights claims against Bond fail.

### F. I will dismiss Brown's *Monell* claim against the County

When a county fails to properly train its officials and they violate the rights of its inhabitants, the county can be held liable. *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 694 (1978). But to bring a claim against a county, a plaintiff must allege that its "failure to train … evidences a deliberate indifference" toward his rights. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted). Plaintiffs typically show this by pleading that county "policymakers were aware of, and acquiesced in, a pattern of constitutional violations" by county officials. *Id.* at 397 (O'Connor, J., concurring in part).

Here, Brown alleges no such pattern. Instead, he points to Papellas and Evans' conduct, then concludes that their actions were "carried out pursuant to a policy." D.I. 7 ¶ 77–78. Such conclusory assertions are not enough to state a *Monell* claim.

True, a single incident may be enough to establish liability where the need for training is "so obvious" that a failure to do so counts as deliberate indifference. *City of Canton*, 489 U.S. at 390 n.10. For instance, where a city gives its officers guns, it must train them to use them safely. But here, Brown does not provide any facts to suggest that the need for more training would have been "plainly obvious to the city policymakers." *Id.* Plus, he does not explain *how* the officers' training was deficient, so he fails to "identify a failure to provide specific training that has a causal nexus with [his] injuries." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). His *Monell* claim fails.

### III. BROWN'S STATE TORT CLAIMS FAIL TOO

In addition to his civil-rights allegations, Brown also brings state tort claims against the defendants. Brown says that Papellas and Evans intentionally inflicted emotional distress on him and that Bond and New Castle County are liable for failing to supervise the officers. D.I. 7 ¶¶ 82−89. But all his claims are barred by statute.

Delaware bars most tort suits against government agencies and their employees. Del. Code Ann. tit. 10, § 4011(a). There are a few narrow exceptions, just one of which is relevant here:

> A[ ] [state] employee may be personally liable for acts or omissions causing property damage, bodily injury or death … but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent.

12

*Id.* § 4011(c). But this exception does not permit any of Brown's tort claims.

*1. Brown's claims against the County.* By its terms, this statute applies only to *employees*, not government *agencies*. *See Carr v. Town of Dewey Beach*, 730 F. Supp 591, 601 (D. Del. 1990). Thus, Brown's tort claims against New Castle County fail.

*2. Brown's emotional-distress claim against Papellas and Evans.* The exception also does not allow Brown's intentional-infliction-of-emotional-distress claim against the officers. Brown alleges that the officers' "extreme" and "outrageous" conduct caused him emotional distress. D.I. 7 ¶¶ 63−71. I need not decide whether the complaint supports this claim because it is barred by statute.

The statutory exception applies only to "acts … causing … bodily injury or death." Del. Code Ann. tit. 10, § 4011(c). It is "well-established that allegations of emotional distress do not amount to bodily injury" under the Act. *Dickerson v. Phillips*, 2012 WL 2236709, at *2 (Del. Sup. Ct. June 13, 2012) (noting cases). Thus, the exception does not permit Brown's emotional-distress claim against the officers.

*3. Brown's failure-to-supervise claims against Bond.* Brown's claims against Bond are also barred. Even if Bond failed to supervise his junior officers, there is no suggestion that he acted with "wanton negligence or willful and malicious intent." Del. Code Ann. tit. 10, § 4011(c). Indeed, the complaint fails to allege *any* facts about Bond's supervision. It asserts that he "owed [Brown] a duty of care to properly supervise … Papellas and Evans," without explaining how he violated that duty. D.I. 7 ¶ 88. Indeed, even if Bond *was* negligent in his supervisory duties, without more, that claim

13

would be barred by the statute. *See Willis v. City of Rehoboth Beach*, 2005 WL 1953028, at *2–3 (Del. Sup. Ct. June 24, 2005).

* * * * *

Brown alleges that the police lacked a good reason to suspect that he was dealing drugs, so they violated his Fourth Amendment rights by forcibly seizing and arresting him. Based on the facts in his complaint, these claims are plausible. So I will allow them to proceed.

But Brown's other claims are unsuccessful. His claims against the Police Department fail because it is not amenable to suit. His civil-rights claims against Bond collapse because Bond was not personally involved in any of the alleged wrongdoing. His malicious-prosecution claim falters because he does not say whether proceedings against him ended favorably. And his tort claims are barred by statute. So I will dismiss them.